NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Mala Sundar**
  **JUDGE**

R.J. Hughes Justice Complex
 P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
 TeleFax:  (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

May 30, 2018

Paul Tannenbaum, Esq.
Zipp Tannenbaum Caccavelli, L.L.C.
280 Raritan Center Parkway
Edison, New Jersey 08837

Joseph Palombit, Esq.
Emil Philibosian, Esq.
Hoagland Longo <u>et al.</u>
40 Paterson Street
New Brunswick, New Jersey 08901

> Re: Raritan Brunswick, L.P., <u>et al.</u> v City of New Brunswick
>     Block 703, Lot 16.09; Block 703.05, Lot 1; Block 703.06 Lot 1
>     <u>Docket No. 007570-2017</u>

Dear Counsel:

This opinion decides defendant's motion to dismiss the above captioned complaint.  On or about October 18, 2017, defendant ("City") filed a motion urging the court to dismiss plaintiffs' complaint on grounds that plaintiffs failed to respond to the City's assessor's requests for income and expense ("I&E") information for plaintiffs' property ("Subject"), which consists of three parcels, pursuant to N.J.S.A. 54:4-34 (commonly known as "Chapter 91").  After several adjournment requests, plaintiffs opposed the City's Chapter 91 motion on December 29, 2017, arguing that the request was ambiguous, and that a Chapter 91 motion is an affirmative defense, which if not pled affirmatively in an answer, is deemed to have been waived.

*

On January 19, 2018, oral argument for this matter were held, along with oral arguments on several other identical Chapter 91 motions, filed by the City against several other plaintiffs' complaints, all such plaintiffs being represented by the same counsel herein. The oral arguments were consolidated because of the identity of the defendant (the City), the identity of plaintiffs' counsel, and the identical reasons for the filing of the Chapter 91 motion. Additionally, barring two oppositions where the facts were different (one motion involved a Chapter 91 request sent to a prior owner, and plaintiffs therein claimed it was unknown whether the prior owner received the request; the other opposition pled lack of receipt of the Chapter 91 request), in all other cases the opposition was on the same grounds, namely that the Chapter 91 request was ambiguous, and that Chapter 91, as an affirmative defense, was not pled as such by the City since it never filed an answer. During this hearing plaintiffs' counsel was specifically asked by the court whether there was anything specific or peculiar in the facts of this case, which would cause the court to hear the case separately from the other matters being heard. Plaintiffs' counsel informed the court that there were not specific or peculiar facts concerning this case. Therefore, the court heard all the related matters at the same time for judicial efficiency.

On January 25, 2018, plaintiff's counsel moved under R. 1:6-3, for leave of court to file a sur-reply brief and a certification in support thereof on grounds, due to "miscommunication," it forgot to include in its opposition, the fact that plaintiffs did respond to the Chapter 91 request. This was despite plaintiffs' counsel's affirmation to the court, on January 19, 2018, that there was nothing factually unique or different about this matter from the other cases, all of which had simply argued that the Chapter 91 request was ambiguous, and the City failed to raise it as an affirmative defense. The City duly opposed this endeavor.

The court heard the motion on April 27, 2018. Plaintiff's counsel claimed that a "miscommunication" caused the new fact to come to light three days after the court had already held oral arguments, viz., that plaintiff had timely mailed a response. For reasons stated on the bench, the court permitted plaintiffs' late "discovered" alleged fact of having responded to the Chapter 91 request, solely in the interest of justice and fairness, and because plaintiffs' counsel moved promptly after this alleged discovery.[1] The court then proceeded to hold a hearing. Testimony was provided by plaintiffs' Vice President of Accounting ("VP") and receptionist, along with testimony by the City's tax assessor.

For the reasons following, the court finds credible plaintiffs' proffered proof of having mailed a response to the Chapter 91 request, therefore, balancing the assessor's equally credible testimony of failure to receive a response with the harsh consequence of the loss of ability to appeal the assessment, the court denies the City's motion to dismiss the complaint.

**FACTS**

The facts are based on the certification of the City's tax assessor and plaintiffs' VP, and the testimony provided by the same, along with testimony provided by plaintiffs' receptionist. On or about June 1, 2016, the City's assessor mailed, via certified mail, return receipt requested, three requests seeking I&E information of/for the above-captioned properties pursuant to Chapter 91. The requests were mailed to 1 Chester Circle, New Brunswick, New Jersey 08901, which was the Subject's owner as of June 1, 2016. The mailings included a copy of the statute. The signed return receipt, for all three parcels, showed an acknowledgement that it was received on or about June 3, 2016.

---

[1] The court also imposed sanctions in terms of plaintiffs having to pay costs incurred by the City in opposing the sur-reply brief.

The VP works out of the plaintiffs' Parsippany office, and has been responsible for responding to Chapter 91 requests for the Subject since 2014.[2] Sometime in early June 2016, the Subject's property owner's New Brunswick office forwarded the three Chapter 91 requests to the VP at the Parsippany office in a monthly package that contain billing invoices, which needed to be processed. On Sunday, July 17, 2016, the VP stated that she worked on, and completed the three Chapter 91 requests. She noted that she typically does not work on Sundays, however, she did on this particular Sunday, because she knew that the Chapter 91 requests needed to be mailed out on Monday, the last day to respond to the Chapter 91 requests.[3] She was unsure of whether she worked on the three requests from home or from the Parsippany office. She cannot print her work from at her home, although she could use the company's network to work from home.

The VP testified as to how she collects the information needed to respond to a Chapter 91 request. First, she downloads the relevant property's reports from the RealPage: Property Management Software ("RealPage"), removes all budget numbers, and saves the results as an Excel worksheet. Next, she saves the Excel document as a PDF and prints the PDF out to mail to the City's assessor. She also electronically saves the PDF in a folder on the company's network. As evidence that she worked on the three requests on July 17, 2016, a screenshot was provided of the network file where the relevant Chapter 91 documents were kept. The screenshot showed three files ("Raritan Brunswick P&L 12.2015," "P&L 2015," and "P&L 2014 & 2015 Side by Side Comparison") that were last modified on July 17, 2016, which the VP stated that she used to provide responses to the Chapter 91 requests.

---

[2] The VP stated that she had been responsible for Chapter 91 requests on other properties owned by the Subject's property owner since 2012.

[3] The 45-day response period ended on July 16, 2016, however, this was a Saturday, thus, the responses to the Chapter 91 requests were due on Monday, July 18, 2016.

The VP could not recall whether she mailed the Chapter 91 responses personally or whether she gave it to the receptionist to meter and mail it. The receptionist also could not recall receiving the responses from the VP, nor could she recall if she or the VP metered and mailed the responses. However, the VP testified and certified that it was her customary practice to "put the Chapter 91 response[s] in an envelope and personally address[] it to the Tax Assessor." Further, as part of her customary practice, she stated that by regular mail "[e]ither I or our office's receptionist would have used our office's postage meter to weigh the envelope and apply the proper postage, and deposit the envelope in the United States Post Office mailbox located" in the building. The receptionist also testified that it was the customary practice and routine to have any documents, which needed to be mailed, be metered and mailed promptly on the same day she meter-stamped the mail. Neither the VP, nor the receptionist, were aware of any mail being returned to the Parsippany office for improper postage or being undeliverable.

The City's assessor testified as to the details on how his office processes Chapter 91 responses received from taxpayers. He stated that every morning he or his receptionist retrieves the mail from the mailroom. Once he has collected all the mail, he separates the mail into different categories. Any mailings categorized as Chapter 91 responses are stamped and the block and lot number is written in the margin. His assistant will then cross the property off a printed list of outstanding Chapter 91 requests, and the responses are filed in folders by property class and block and lot, in block and lot order. After the assessor receives most of the Chapter 91 responses, he enters a code in the MOD-IV database, which enables this database to display that the Chapter 91 response was received.

The assessor stated that he did not receive any responses for the Chapter 91 requests, which were sent to the Subject's property owner. Although he had received responses almost every year

5

for the Subject, there was no indication that there were responses for tax year 2017. He alleged that he made an exhaustive search for the Chapter 91 responses, but was unable to locate the Chapter 91 responses.

**FINDINGS**

N.J.S.A. 54:4-34 requires a property owner to "render a full and true account of" the property owner's "name and real property and the income therefrom," if the property is "income-producing." Failure or refusal to respond within 45 days of the Chapter 91 request allows the assessor to reasonably determine the property's "full and fair value" based upon any information he or she has. Ibid. A non-response also bars the property owner from appealing that assessment. Ibid. The harsh sanction of a taxpayer losing its right to appeal its assessment, pursuant to Chapter 91, "requires a strict construction of the statute." Great Adventure, Inc. v. Township of Jackson, 10 N.J. Tax 230, 233 (Tax 1988). A dismissal of a taxpayer's appeal is "only appropriate" under Chapter 91 when the taxpayer "has 'failed or refused to respond' to the assessor's Chapter 91 request." Paramus Assocs., LLP/Home Depot, USA, Inc. v. Borough of Paramus, 27 N.J. Tax 274, 276 (Tax 2013) (citing N.J.S.A. 54:4-34). Further, the severe sanction pursuant to Chapter 91 has caused the courts to be reluctant in granting a Chapter 91 where there is an absence "sufficient evidence of non-compliance by the taxpayer." Id. at 283 (citation omitted).

New Jersey cases have acknowledged that if mail was "addressed, stamped, and posted," then there is a presumption that the mail was received by the party whom it was addressed to. SSI Med. Servs. v. HHS, Div. of Med. Assistance & Health Servs., 146 N.J. 614, 621 (1996). In order to invoke this presumption certain conditions must be shown: "(1) that the mailing was correctly addressed; (2) that proper postage was affixed; (3) that the return address was correct; and (4) that the mailing was deposited in a proper mail receptacle or at the post office." Ibid. (citing Lamantia

6

v. Township of Howell, 12 N.J. Tax 347, 352 (Tax 1992)).  Proof that these conditions were followed can be "in the form of evidence of habit or routine practice with corroboration that the practice was followed in a particular instance."  J & J Realty Co. v. Township of Wayne, 22 N.J. Tax 157, 162 (Tax 2005) (internal quotations and citation omitted).  However, in certain cases, where a large business or organization is involved, and that business handles a copious amount of mail on a daily basis, "it may not be possible for individuals engaged in mailing activities to recall actual mailing of a document or whether the custom or practice of mailing was followed on a given day."  SSI Med. Servs., 146 N.J. at 624.  Therefore, the court is charged with the duty to "evaluate the nature and worth of the corroborative evidence offered to determine whether it meets the preponderance of the evidence standard and raises a presumption of mailing and receipt."  Id.  at 624 n.1.

In the case at hand, plaintiffs' VP had been responsible for responding to Chapter 91 requests since 2012, and has been responsible for responding to the Subject's Chapter 91 requests since 2014.  Although she does not specifically recall mailing the responses or giving the responses to the receptionist to meter and mail, she did provide evidence that she prepared the Chapter 91 responses on a Sunday, and testified that she would not typically work on a Sunday, unless the document she was working on had to be sent out on Monday.  Further, plaintiffs' provided a screenshot of the documents that would have been used to respond to the Chapter 91 requests, and this screenshot showed that those documents were last worked on Sunday, July 17, 2016.  Given the fact that the VP has been responsible for responding to Chapter 91 requests for over five years, no Chapter 91 responses came back as undeliverable, and the fact that she worked on the responses on a Sunday to get the responses mailed out by Monday, the court finds that the VP's claim that she sent out the responses credible.  The City also agreed that plaintiffs had, in the past, responded

7

to Chapter 91 requests (the assessor stating that he was shocked at the non-response by plaintiffs), and did not contend lack of credibility of testimony proffered by plaintiffs on grounds the prior responses were never last-minute as the instant one was.

"The presumption of receipt derived from proof of mailing is rebuttable and may be overcome by evidence that the notice was never in fact received." SSI Med. Servs., 146 N.J. at 625 (citation and internal quotation marks omitted). Here, the tax assessor testified that he had not received the responses from the Subject's property owner, and made an exhaustive search of his office for the responses.

The court finds both parties' proffered proofs and testimony as to mailing the responses and its non-receipt, equally credible. In such situations, the court must balance the "impact" on the plaintiffs of granting the motion "against the impact on defendant and the assessing process of the denial of the motion." J & J Realty Co., 22 N.J. Tax at 164. The impact on the City and the assessor of having the motion denied, such that the assessor would not have the most recent I&E information, "is of a far lesser magnitude" than the motion being granted and the plaintiffs losing the right to appeal the assessment. Id. at 165. Moreover, in cases similar to the case at hand, the courts have stated that

> when a taxpayer, in good faith, responds by regular mail to a Chapter 91 request, and, through no fault or negligence of the taxpayer, the assessor does not receive the response, the severe limitation on appeal rights contained in Chapter 91 should not be imposed. That limitation is appropriate only when a taxpayer has, in the words of the statute, 'failed or refused to respond' to the assessor's request.
>
> [Ibid. (citing N.J.S.A. 54:4-34).]

Under the circumstances of this case, the court finds plaintiffs neither failed, nor refused, to respond to the City's Chapter 91 requests. Therefore, and absent testimony or evidence

contradicting the VP and receptionist's testimony, the court finds that the plaintiffs timely responded to the City's Chapter 91 requests.

## CONCLUSION

For the aforementioned reasons, the court denies the City's Chapter 91 motion. Due to this denial, the court does not opine on plaintiffs' argument that the Chapter 91 motion is an affirmative defense, which if not pled in a timely filed answer to a complaint, is deemed waived.

An Order will be entered denying the City's motion. Due to the recent revision of Tax Court assignments by the Chief Justice of the New Jersey Supreme Court dated January 22, 2018 (retroactive to January 16, 2018), the matter, which was retained by the undersigned for rendering a decision, will be returned to Hon. Mary Siobhan Brennan, J.T.C., for further scheduling.

Very truly yours,

Mala Sundar, J.T.C.